UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

LATONYA FULLER              )
                           )
v.                         )          NO. 2:07-CV-190
                           )          (Cr: 2:02-CR-23)
UNITED STATES OF AMERICA    )          *Jordan/Inman*


## MEMORANDUM OPINION

Proceeding *pro se*, federal inmate Latonya Fuller brings this motion to vacate,

set aside, or correct her sentence under 28 U.S.C. § 2255. In 2005, following her

guilty plea, petitioner was convicted of conspiring to distribute and possessing with

the intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C.

§ 846 and § 841(a)(1). Due to her prior felony drug conviction, she was subject to

a statutory minimum mandatory sentence of twenty years and a maximum life

sentence. 21 U.S.C. § 841(b)(1)(A).6 and § 841(a)(1). However, a guidelines range

of 168 to 210 months and a departure motion filed by the government for rendering

substantial assistance netted petitioner a 156-month prison term.

Petitioner filed an appeal, alleging that her plea was invalid, that her attorney

gave her ineffective assistance, and, citing to *United States v. Booker*, 543 U.S. 220

(2005), that the sentence departure was insufficient. The Sixth Circuit found that

petitioner's plea was knowing and voluntary, declined to address her ineffectiveness claims, and determined that it had no jurisdiction to review the merits of a request for downward departure for substantial assistance, either before or after *Booker*. *United States v. Fuller*, 192 Fed.Appx. 441, 2006 WL 2252702 (6th Cir. Aug. 7, 2006). Thereafter followed this instant motion, offering those three claims (or versions of them) and a fourth as grounds for relief. [Doc. 138 in Criminal Action No. 2:02-cr-23].[1] The United States has filed a response, arguing that petitioner's claims warrant no relief and that this § 2255 motion should be dismissed. [Doc. 163]. Petitioner has replied in objection, stating that she herself sold only about 26 to 27 grams of the illegal substance; that her sentence is quite harsh for a small-time dealer or user, as is she; and that this all goes to show that she received ineffective assistance from her lawyer. [Doc. 166].

## I. Factual Background

Petitioner pled guilty to Count one of an 11-count indictment charging her and two co-defendants with crack cocaine offenses. Supporting her plea to the §841(a)(1) violation was an agreed factual basis, signed by petitioner [Doc. 67], with which she orally concurred when those facts were recited by the government's attorney during her change of plea hearing on February 25, 2004. [Doc. 70, Plea Hr'g

---

[1] All subsequent citations to the record refer to the criminal case file.

Tr.] According to the recitation, witnesses would have testified that, beginning in February of 2001 through March of 2002, petitioner was involved in a conspiracy to distribute and possess with intent to distribute more than five hundred (500) grams, but less than 1.5 kilograms, of crack cocaine in and around Johnson City, Tennessee, and that the drug was distributed in amounts ranging from a gram to a ¼ - ½-ounce quantity.

Evidence existed to show that, prior to that time, she had been convicted of a felony drug offense in North Carolina. Also, the proof would have demonstrated that a coconspirator drove petitioner to North Carolina, in December of 2001, to obtain three (3) ounces crack cocaine, which they had pooled their money to purchase. Further proof showed that, frequently, petitioner dealt the drug out of a "crack house," operated by a co-defendant in a Johnson City apartment, and that the co-defendant, in turn, delivered crack cocaine for petitioner and other dealers. In addition, on June 28, 2001, petitioner was recorded selling three grams of crack cocaine for $350 to an undercover agent and, on September 21, 2001, four grams of crack cocaine for $400 to a confidential informant. Finally, petitioner admitted to selling 12 ounces of crack cocaine in ½ ounce quantities during the eight months preceding her April, 2002 arrest and to purchasing ½ ounce amounts of crack cocaine from a coconspirator and an additional ounce from another person. Following this

proclamation of facts, petitioner was asked if she agreed with the government's summary of what she had done. Petitioner's retained attorney, Mr. Michael J. LaGuardia, interjected that, save for two disputed matters, petitioner concurred with everything. One matter involved the amount of drugs (i.e., the over-500-gram figure) distributed by the conspiracy in which she participated. Though counsel had explained the concept of a conspiracy to his client, it was her view that the plea offer was for over 50 grams, that she herself sold 26 or 27 grams of crack cocaine, and that, while she thought the figure would be over 50 grams, she was unsure that it would be over 500 grams. The second point of disagreement concerned the sum she received for the four grams she sold to the CI, which she remembered as being $350, rather than the $400 reflected in the government's factual summation.

The government's attorney, Mr. David Jennings, responded that he did not believe that it was significant whether she received $350, as she recalled, or $400, as stated in the factual basis. Mr. Jennings, however, insisted that, in order to accept responsibility and truthfully agree that the plea arrangement is what she had entered into, she was required to acknowledge that the members of the conspiracy were responsible for at least 500 grams of crack cocaine. The transcript shows that the following exchange then occurred between the Court, Mr. LaGuardia; and Mr. Jennings:

. . . . .

MR. LaGUARDIA:   Your Honor, I would note that on page two of the plea agreement . . . it notes in paragraph two the maximum penalties [petitioner] will be exposed to by virtue of a guilty plea is a term of imprisonment of a minimum mandatory 20 years and not more than life.  I believe that that is speaking to 50 grams or more, Your Honor.

. . . . .

MR. JENNINGS:   If you look at the first full paragraph of the agreed factual basis by her signature anyway she has agreed that the conspiracy of which she was a member distributed or possessed with intent to distribute at least 500 grams, but less than 1.5 kilos of crack cocaine.  The way, the impact of that, of course, is that is a level 36 under the guidelines, two below the maximum, when you are dealing with crack.  It may not matter in her case because she has got, she may have a restricted guideline range of a precise 240 months because of her prior felony cocaine conviction.

MR. LaGUARDIA:   That is correct.

. . . .

THE COURT:   I guess if she will acknowledge that the conspiracy of which she was a member was responsible for over 500 grams then she has lived up

to the written word here.  If she denies that, then I am not in a position . . . to speak

for [the government's attorney] that she is acknowledging her guilt . . . .

    MR. LaGUARDIA:  Your Honor, . . .she does concur she has the prior

[felony drug conviction] and she . . . is not able to dispute that they distributed 500

grams or more on that basis.  And she understands, the thing that she understood

based on the guideline she is at 20 years to life.  I think that clearly is reflected.

    THE COURT:  Ms. Fuller, do you understand what your lawyer just

said?

    (Off the record discussion with counsel and the [petitioner].)

    MR. LaGUARDIA:  She understands, Your Honor.

    THE COURT.  Okay.  Based upon those facts then, Ms. Fuller, how do

you plead?

    MS. FULLER:  Guilty.

    THE COURT:  And do you understand what your are pleading guilty

to?

    MS. FULLER:  Yes, sir.

[Doc. 70, Plea Hr'g Tr. at 12-15].

Following this colloquy, petitioner was advised of the maximum and

mandatory minimum penalties, including the mandatory term of supervised release,

fine and special assessment; the civil rights she was giving up; and the fact that her sentence would be determined in conformity with the sentencing guidelines. She was then convicted of Count one and proceeded to the sentencing stage.

In the presentence report ["PSR"], the probation officer calculated petitioner's guidelines range as 168 - 210 months, but due to a prior felony drug conviction in North Carolina, her statutory sentence was a mandatory minimum of 20 years. 21 U.S.C. § 841(b)(1)(A). Petitioner filed no objection to the PSR. The Court granted the government's request for a 3-point downward departure for substantial assistance, sentenced her to a term of 156 months imprisonment, and dismissed Counts two, three, four and eight of the indictment, as provided for in the plea agreement.

## II. Standards of Review

To seek relief under § 2255, a prisoner "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir.2003) (citation omitted). A petitioner can be granted § 2255 relief on the basis of a constitutional error which had a substantial and injurious effect or influence on the proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994). A prisoner who is seeking

to obtain collateral relief must clear a "significantly higher hurdle" than would exist on direct appeal. *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, a court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate, the answer, and the records of the case show conclusively a petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court finds that an evidentiary hearing is unnecessary and that it can decide this motion on the record.

### III. Discussion

Petitioner offers four main grounds for relief: ineffective assistance, invalid guilty plea, invalid plea agreement; and an unreasonable sentence, under the authority of *United States v. Booker*, 543 U.S. 220 (2005), and its progeny. The latter ground contains a sub-claim, to wit, that petitioner's sentence also is illegal due to prosecutorial misconduct and ineffective assistance.

Two and a half claims can be disposed of forthwith. Petitioner's challenge to her guilty plea was raised on appeal, and the Sixth Circuit, finding that she had presented no evidence that her plea was not voluntary and knowing, concluded that it was valid. An issue which was raised on appeal cannot be revisited in these § 2255

proceedings, unless petitioner shows exceptional circumstances. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir.1999). No such a showing has been made.

Petitioner's challenge to the validity of her plea agreement itself likewise is doomed, as it is precluded by her guilty plea. In *Tollett v. Henderson*, 411 U.S. 248 (1973), the Supreme Court held that a voluntary and knowing guilty plea waives all non-jurisdictional pre-plea constitutional violations. "We hold that after a criminal defendant pleads guilty, on the advice of counsel . . . [t]he focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Id.* at 267.

Here, as noted in *Tollett*, "the facts giving rise to the constitutional claims were generally known to [petitioner] and [her] attorney[] prior to the entry of the guilty plea[]," and the issue to be determined "turn[s] on the adequacy of the attorney['s] advice in evaluating those facts as a part of the recommendation to plead guilty." *Id.* at 266 (referring to the "*Brady* trilogy," composed of *Brady v. United States*, 397 U.S. 742 (1970); *McMann v. Richardson*, 397 U.S. 759, 770 (1970); and *Parker v. North Carolina*, 397 U.S. 790 (1970)). *See also United States v. Broce*; 488 U.S. 563, 569 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the

9

affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack."). Lastly, petitioner's plea agreement contained an integration clause [Doc. 66 at ¶ 19], which typically insulates it from a § 2255 attack. *See United States v. Hunt*, 204 F.3d 931, 936 (6th Cir. 2000) ("[O]nce the government enters into a Rule 11 plea agreement containing an integration clause, the result . . . should be final and immune from collateral attack.").

The *Booker*-based aspect of petitioner's third claim was also presented on appeal. The Sixth Circuit found that there was no *Booker* error because petitioner "was subject to a statutory mandatory minimum sentence and received a downward departure based on her assistance." *United States v. Fuller*, 192 Fed.Appx. 441, 444, 2006 WL 2252702, *3 (6th Cir. Aug. 7, 2006).[2] As noted earlier in this opinion, a claim which was raised and decided on appeal will only be entertained in § 2255 proceedings, if a petitioner shows exceptional circumstances, which are not present here.

---

[2] Petitioner's § 2255 *Booker*-related claim, apparently, was prompted by the Sixth Circuit's statement that "[a]fter *Booker*, of course, a defendant who received a downward departure for substantial assistance is free to argue that the sentence from which the district court departed was unreasonable [but] insofar as the claim invites appellate review of the extent of a downward departure, it is foreclosed." *Fuller*, 192 Fed.Appx. at 443, 2006 WL 2252702 at *3 (citation omitted). The circuit court then noted that petitioner had not asserted that her sentence was unreasonable.

Furthermore, even if the exact same claim was not raised or decided on appeal, it cannot be asserted now because of the waiver doctrine. Under that doctrine, a claim which could have been but was not raised on direct appeal may not be reviewed in a § 2255 motion, absent a showing of cause and actual prejudice to excuse a failure to raise the claim previously. *Bousley v. United States,* 523 U.S. 614, 619 (1998); *United States v. Frady,* 456 U.S. 152, 166 (1982); *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Petitioner certainly could have raised the same claim on appeal which she now presents in her § 2255 pleading. Nothing is offered to demonstrate cause for petitioner's failure to raise this particular claim on appeal or any resulting prejudice. Absent a showing of cause and prejudice flowing the alleged constitutional violation, this claim will not be reviewed. *Bousley,* 523 U.S. at 619; *Elzy*, 205 F.3d at 884.

This leaves for disposition the claim of ineffective assistance and the sub-claim of ineffective assistance intertwined with prosecutorial misconduct at sentencing.

## A. **Applicable Law**

Petitioner charges both her trial attorney, Mr. LaGuardia, and her appellate attorney, Mr. Gregory Napolitano,[3] with certain shortcomings with regard to her plea,

---

[3] The Sixth Circuit appointed Mr. Napolitano to represent petitioner on appeal after Mr. LaGuardia withdrew as her attorney. [Docs. 93, 97].

sentencing, and appeal.

The United States Supreme Court has established a two-part test for determining when assistance of counsel is constitutionally ineffective. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, the petitioner must show that her counsel's errors were so egregious as to render counsel's performance constitutionally deficient – that is, outside the "wide range of professional assistance." *Id.* at 687; *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996). The alleged errors or omissions must be evaluated from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Strickland*, 466 U.S. at 689. In effect, in order to show counsel's performance was deficient, petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 689.

Second, petitioner must show her counsel's deficient performance so prejudiced her that the result of the proceeding is unreliable. *Id.* at 687. A petitioner will satisfy the prejudice prong of the *Strickland* test if she shows that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.[4] In order to establish "prejudice"

_____

[4] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid.*

within the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's professional errors, she would not have pled guilty but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

Unless there is a likelihood of a successful defense to the charge, no alleged error by counsel is a basis for relief. *Id.* at 59. Indeed, counsel is constitutionally ineffective only if a performance which fell below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). The Sixth Amendment guarantees effective assistance of counsel on the first appeal as of right." *Moore v. Carlton,* 74 F.3d 689, 692 (6th Cir.) *(citing Evitts v. Lucey,* 469 U.S. 387 (1985)), *cert. denied,* 516 U.S. 1183 (1996).

**B. Analysis**

1. *Appellate Counsel.*

The claim against Mr. Napolitano can be disposed of forthwith because the only error attributed to him is that, even though he "attempted to address some of the issues, he was not successful in having Fuller's issues meaningfully heard by the Sixth Circuit as indicated in their (sic) opinion filed on 7/7/06." [Doc. 142, Pet'r's Brf. at 12]. Any failure to "meaningfully hear" the issues raised on appeal cannot be

ascribed to counsel, whose role in the adjudicatory process is to present issues to be reviewed and not to review them himself. Giving an issue a meaningful hearing is the duty of the judicial officer(s) assigned to preside over the appeal.

At any rate, to the extent that petitioner's real claim, broadly construed, is that appellate counsel failed to meaningfully raise or argue issues in the Sixth Circuit, this too fails because she has failed to present any developed argument and, needless to say, offers absolutely no factual details showing either a defective performance or resulting prejudice. *See Strickland,* 466 U.S. at 698 (A petitioner must show both deficient performance and resulting prejudice to succeed on claims of ineffective assistance of counsel.). Thus, the claim of ineffective assistance against Mr. Napolitano affords petitioner no ground for relief.

2. *Trial Counsel.*

Petitioner's main allegation against Trial Attorney Laguardia is that he allowed her "to provide self-incriminating information to the FBI, and even to testify on the Government's behalf, without protection, at the time that her plea before the court was 'not guilty' and a trial was still pending." [Doc. 142, Pet'r's Brf. at 7, 10]. Petitioner asserts that counsel's advice to waive her self-incrimination right and testify for the government "fell well outside 'the wide range of professionally competent assistance' contemplated by *Strickland*" and that it "fatally prejudiced her

14

defense." *Id.* at 11. The United States, in its response, maintains that it would not have agreed to grant petitioner immunity in exchange for her testimony and that Mr. LaGuardia was not deficient in failing to negotiate such a benefit since, by testifying at a confederate's trial, she avoided a virtually certain imposition of a 240-month sentence.

At the outset, the Court notes that petitioner has not alleged a proper claim of prejudice with respect to Mr. LaGuardia's representation, since she does not assert that there is a reasonable probability that, but for his unprofessional errors, she would not have pled guilty to the crack cocaine conspiracy, but would have insisted on standing trial on the charged offenses. The failure to allege prejudice alone provides an adequate ground for rejecting an ineffective assistance of counsel claim, even if deficient performance is assumed. *See Strickland*, 466 U.S. at 687.

Nonetheless, the Court will address the prejudice component and will assume, but not find, that Mr. LaGuardia's advice to petitioner to waive her Fifth Amendment privilege not to incriminate herself, to testify against a defendant in a related case, to debrief with an FBI agent, and to do all this without the protection of any sort of immunity agreement was an "error[] so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 689. But indulging in this assumption does not assist petitioner because she has not shown that Mr. LaGuardia's

advice resulted in prejudice as required by *Strickland* and *Hill*. *See Strickland,* 466 U.S. at 697("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Aside from a bare allegation that information she gave to an FBI agent and the testimony she gave at another criminal accused's trial was "fatally prejudicial to her defense," petitioner has not suggested what sort of defense she would have mounted to the cocaine-conspiracy charge or to the other four charges which were dismissed in accordance with the plea agreement, much less identified one that was likely to succeed. Absent such a defense, as observed previously, no error of counsel provides her with a ground for relief. *Hill,* at 474 U.S. at 59.

Moreover, the record shows that the evidence of the crack cocaine conspiracy which could have been offered at any trial was strong and wide-ranging and that were witnesses cooperating with the government who could have testified against petitioner. [Docs. 30, 63, Plea Agreements of Rhonda Saunders and Josalyn M. Duckworth]. Further, petitioner received a 3-level reduction in her offense level for acceptance of responsibility, as well as downward departure from the statutory mandatory minimum 20-year sentence, pursuant to an 18 U.S.C. § 3553(e) motion filed by the government. The departure and one level of the three-level reduction,

undoubtedly, were generated by petitioner's willingness to reveal to the authorities information about the conspiracy and to testify for the government, given that the prosecutor's motions to depart under § 3553(e) and for a further reduction in her offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(b) were predicated on the disclosure and the testimony by petitioner. And it is a crucial point that, absent the government's motions, the Court had no authority to depart below the statutorily mandated 240-month sentence or to award petitioner the one-point reduction in her offense level. *See*: 28 U.S.C. § 3553(e); U.S.S.G. § 3E1.1(b); and Doc. 103, Sent. Hr'g Tr. at 4-6. Also, it is worth noting that, had petitioner rejected a guilty plea and gone to trial, the four counts against her as alleged in the indictment would not have been dismissed as they were, under a provision in the plea agreement

### 3. *Hybrid Claim of Ineffective Assistance.*

The final matter raised in the § 2255 motion, as the Court reads it, is an allegation that trial counsel engaged in a conspiracy with the prosecutor against petitioner. More specifically, petitioner charges that Mr. LaGuardia "did his part to obfuscate" the issue as to the drug quantity" and that he and the prosecutor "colluded . . . to deny her the right to a trial on substantially overstated charges so as to produce a harsh and unreasonable sentence." [Doc. 142, Pet'r's Brf. at 9].

This claim appears to be a repackaging of petitioner's earlier claim that she did

not understand or agree with the amount of drugs which would be used to determine her offense level and, thereafter, to set her guidelines sentence. As noted, the Sixth Circuit reviewed the pertinent section of the transcript and found that it illustrated that petitioner acknowledged that the amount of cocaine base was 500 grams and that her plea was knowing, voluntary and intelligent. To the extent that petitioner's allegation of collusion rests on the fact that Mr. LaGuardia, not she personally, indicated that she understood the drug quantity at issue, the Sixth Circuit found that fact to be of no import since counsel conferred with his client before he so indicated and because petitioner adduced no evidence to show that her plea was invalid.

If this allegation of collusion between her attorney and the prosecution is also wedded to the government's insistence that petitioner acknowledge on the record the 500 grams of crack cocaine involved in the conspiracy, there are no factual allegations to support the existence of such a compact. Put simply, the record does not show, and petitioner does not explain, how these two legal advocates manipulated the quantity-of-drugs issue or engaged in any type of underhandedness for the purpose of charging her with more or greater offenses than warranted or increasing her punishment one whit. Conclusory contentions provide no basis for section 2255 relief. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (finding that "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as

are contentions that in the face of the record are wholly incredible").

Finally, while petitioner may instinctively feel that justice and fair play require that her punishment be fixed solely upon the 26 to 27 grams of the illegal substance which *she herself sold* (as opposed to that *sold by all the drug-conspiracy members collectively*), the laws governing a drug conspiracy, *see* 21 U.S.C. § 846, say otherwise. *See United States v. Robinson*, 547 F.3d 632, 637-38 (6th Cir. 2008). For all these reasons, this claim likewise falls short.

## IV. Conclusion

Because the grounds presented for relief in this motion to vacate lack merit, this motion to vacate will be **DENIED**.

## V. Supplemental Motion

After this memorandum was finalized and ready to be entered in the Court's electronic case filing system, petitioner submitted a filing, labeled "Supplemental Motion Moving the Court To Find Ineffective Assistance of Counsel For Disparity Reduction And To Declare Prior Drug Offenses May Not Be Used To Apply Mandatory Minimum Sentence Per New, Retroactive Caselaw & Fifth Amendment." [Doc. 175]. As the title of this submission implies, petitioner is asserting additional claims for review, including ineffective assistance of counsel and double jeopardy.

Prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the only time constraint for a federal prisoner to file a § 2255 motion was if the respondent had been prejudiced in responding to the motion or petition because of the delay in filing. Rule 9(a), Rules Governing Section 2255 Proceedings For The United States District Courts. As a result of the AEDPA, however, a federal prisoner has one year in which to file a § 2255 motion. The limitation period generally runs from the date on which the judgment of conviction becomes final, which in this case was Monday, November 6, 2006, upon the lapse of the ninety-day period to petition the U. S. Supreme Court for certiorari review of the Sixth Circuit's decision on her direct appeal.

Therefore, the claims asserted in the supplemental motion, filed on November 9, 2010—the date in petitioner's certification—are time-barred, unless they "relate" back, under Rule 15(c)(2), Federal Rules of Civil Procedure, to the claims alleged in the timely-filled initial petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005) (applying Rule 15(c)(2) to § 2254 petitions); *Howard v. United States*, 533 F.3d 472, 475-76 (6th Cir.2008) (noting that Rule 15(c)(2) applies to § 2255 proceedings) (citing *Wiedbrauk v. Lavigne*, 174 Fed.Appx. 993, 1001-02 (6th Cir.2006), and *Oleson v. United States*, 27 Fed.Appx. 566, 571 (6th Cir.2001)). As the Supreme Court has explained, "relation back depends on the existence of a common 'core of operative

facts' uniting the original and newly asserted claims." *Mayle,* 545 U.S. at 659 (citation omitted). The question then becomes whether the amendments are timely because they "relate back" to the original filing date.

Petitioner's first proposed amendment is that she received ineffective assistance of counsel with respect to her motion for the retroactive application of the Sentencing Guidelines to her crack cocaine offense, filed pursuant to 18 U.S.C. § 3582(c). [Doc. 170].     Clearly, this claim is unrelated to the claim of ineffective assistance asserted in the original motion because the alleged attorney errors are not attributed to either her trial or appellate lawyers but instead to Mr. Tim Moore, the attorney with Federal Defender Services who was appointed to represent her in proceedings which occurred after the filing of the instant § 2255 motion. Moreover, petitioner has no constitutional entitlement to counsel in post-conviction proceedings, including § 2255 motions. *Foster v. United States,* 345 F.2d 675, 676 (6th Cir. 1965). If the Sixth Amendment does not require counsel in a § 2255 motion, it does not require counsel in a motion for the retroactive application of the guidelines. And if counsel is not required to be furnished by the Constitution, then the Constitution does not govern the quality of his representation..

As the Court understands petitioner's next proposed claim, she is arguing that, since she was already punished with imprisonment for her prior North Carolina drug

conviction, the use of that conviction to increase her federal sentence subjects her to Double Jeopardy in violation of the Fifth Amendment. This claim was not raised in the original petition either, and it does not relate back to any earlier claim. Thus, it is time-barred. Furthermore, according to the Sixth Circuit, a sentence enhancement under 21 U.S.C. § 841(b) for a previous drug conviction does not constitutes a violation of the Double Jeopardy Clause of the U.S. Constitution. *United States v. Gonzalez*, 257 Fed.Appx. 932, 946, 2007 WL 4438131, 13 (6th Cir. Dec. 17, 2007) (citing *United States v. Pruitt*, 156 F.3d 638, 646 (6th Cir.1998); *United States Flowal*, 163 F.3d 956, 963 (6th Cir. 1998); and *United States v. Stone*, 218 Fed.Appx. 425, 442 (6th Cir.2007)).

In the last claim offered in the motion to amend, petitioner presses the Court to apply to her situation new and retroactive case law which, she maintains, has changed the parameters for a career offender. As she sees it, the application of the new law is called for because, like career offenders, she too was given a higher sentence due to her "prior serious drug conviction."

It is worth noting at the outset that petitioner has made a misstatement of fact or that she simply misunderstands the importance of an extra adjective such as "serious" in a sentencing context. The increase in her sentence for the crack-cocaine conspiracy was due to a prior drug conviction, period, *see* 21 U.S.C. § 841(b)(1)(A),

not to a prior *serious* drug conviction. A prior *serious* drug conviction increases the penalty for a firearms offense or for certain violent felonies. *See* 18 U.S.C. § 924(e)(1) and § 3559(c). These terms ("prior drug conviction" and "prior *serious* drug conviction") are distinct, defined differently, not interchangeable, and tied to specific offenses.

Furthermore, the cases cited by petitioner do not support her position. The first cited case, *Gilbert v. United States*, 609 F.3d 1159 (11th Cir. 2010), has been vacated by the Eleventh Circuit, which will rehear the case *en banc*. *Gilbert v. United States*, __ F.3d __, 2010 WL 4340970 (11th Cir. Nov. 3, 2010). Petitioner also relies on *Begay v. United States*, 553 U.S. 137 (2008), but *Begay* does not assist her either. *Begay* holds that a DUI is not a "violent felony" for purposes of triggering a mandatory minimum sentence under the Armed Career Offender Act (ACCA), 18 U.S.C. § 924(e)(1), because this crime is different from the examples of violent felonies listed in the ACCA (i.e., burglary, arson, extortion, and crimes involving explosives) and because DUI, unlike the example crimes, does not manifest purposeful, violent and aggressive conduct. *Id.* at 144-45.

Unfortunately for petitioner's argument [but fortunately for petitioner], *Begay* and the other supposedly supporting cases to which she points involve career offender guidelines sentencing or the so-called "three-strikes" rule in 18 U.S.C. § 3559(c)(1)

23

(imposing a life sentence for certain violent felonies where a defendant has two or more qualifying prior convictions). Petitioner is not a career offender under the guidelines and she was not sentenced under either of these sentencing laws; she was sentenced under the penalty provisions in 21 U.S.C. § 841(b)(1)(A) and § 851 (requirement that government file notice of enhancement due to defendant's prior drug conviction). Therefore, the Court declines petitioner's invitation to apply these career-offender decisions to her crack cocaine sentence.

## V. Certificate Of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if she is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Those whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id.*; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court has individually assessed petitioner's claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law. Thus, jurists of reason would not conclude the disposition of those claims was debatable or wrong. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

A separate order will follow.

**ENTER**:

LEON JORDAN
UNITED STATES DISTRICT JUDGE